UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARNULFO ZEPEDA, | ) | Civil No. 09-1811-JM(WVG) |
| Petitioner, | ) | REPORT AND RECOMMENDATION |
| | ) | GRANTING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| DOMINGO URIBE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Arnulfo Zepeda (hereafter "Petitioner") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (hereafter "Petition"). Respondent Domingo Uribe (hereafter "Respondent"), has filed an Answer to the Petition. Petitioner has filed a Traverse to Respondent's Answer. The Court, having reviewed the Petition, Opposition, Traverse, and the documents attached thereto and/or lodged therewith and GOOD CAUSE APPEARING, HEREBY RECOMMENDS that the Petition for Writ of Habeas Corpus be GRANTED.

I

PROCEDURAL HISTORY

On October 29, 1985, a judgment of conviction was entered against Petitioner for first degree murder and second degree murder

1  by use of a firearm. (Respondent's Lodgment No. 1).

2      On December 8, 2006, officials at Pleasant Valley State

3  Prison held a disciplinary hearing regarding Petitioner's alleged

4  participation in a riot.  Petitioner was found guilty as charged.

5  (Respondent's Lodgment No. 2).

6      On September 25, 2008, Respondent filed a Petition for Writ

7  of Habeas Corpus in the Imperial County Superior Court. (Respon-

8  dent's Lodgment No. 6).  On June 2, 2008, the Imperial County

9  Superior Court granted the Petition. (Respondent's Lodgment No. 7).

10      On September 24, 2008, Respondent appealed the decision of

11  the Imperial County Superior Court. (Respondent's Lodgment No. 8).

12  On March 4, 2009, the California Court of Appeal reversed the

13  decision of the Imperial County Superior Court. (Respondent's

14  Lodgment No. 10).

15      On March 27, 2009, Petitioner filed a Petition for Review in

16  the California Supreme Court. (Respondent's Lodgment No. 11).  On

17  June 10, 2009, the California Supreme Court denied the Petition for

18  Review without comment. (Respondent's Lodgment No. 12).

19      On August 19, 2009, Petitioner filed the Petition for Writ of

20  Habeas Corpus now pending before this Court.

21                              II

22                     STATEMENT OF FACTS

23      This Statement of Facts is taken substantially from the

24  California Court of Appeal unpublished opinion, *In re Arnulfo*

25  *Zepeda*, No. D053475 (Cal. Ct. App., 4th Dist. Div. 1, March 4,

26  2009)(Respondent's Lodgment No. 10).  This Court relies on these

27  facts under 28 U.S.C. § 2254(e)(1). See Park v. Raley, 506 U.S. 20,

28  35-36 (1992) (holding findings of historical fact, including

1  inferences properly drawn from such facts, are entitled to statutory

2  presumption of correctness).

3        According to prison staff, on November 3, 2006, while
          there were approximately 300 inmates in the prison
4        yard, two fights broke out in the early afternoon
          between two Fresno bulldogs (apparently a prison gang)
5        and three Southern Hispanic (apparently another prison
          gang) inmates.  Petitioner was not named as one of the
6        combatants.   The fight between inmates Carrillo (a
          member of the Fresno Bulldog gang) and Aguirre (a
7        member of the Southern Hispanic gang) moved from the
          front of the Facility C Building 2 toward the soccer
8        goal on the recreation yard.   The fight involving
          inmates Luscano, Chavez (members of the Fresno Bulldog
9        gang) and Royzman (a member of the Southern Hispanic
          gang) took place near the corner of Facility C
10       Building 2.
          Correctional Officer Martinez used the public address
11       system to order all inmates in the yard to get down.
          All inmates complied except Carillo and Aguirre.
12       Sergeant Steele instructed staff to form a skirmish
          line, and then ordered Carillo and Aguirre to "prone
13       out."  Both complied.
          Correctional Officers escorted the five named combat-
14       ants, as well as inmates Leon and Petitioner, to
          holding tanks for medical evaluations and interviews.
15       Correctional Officer Worth prepared a schematic map of
          the incident. The schematic map showed Leon and
16       Petitioner standing in front of Facility C Building 2,
          but did not indicate specifically how far they were
17       from Luscano, Chavez and Royzman.
    (Respondent's Lodgment No. 10 at 2)
18
          On November 16, 2006, Petitioner was charged with a Rules
19
    Violation which alleged that he participated in a riot.
20
          On December 8, 2006, at the disciplinary hearing
21       before the Senior Hearing Officer (hereafter "SHO"),
          Correctional Officer DeShazo testified that Petitioner
22       was not an active participant in the riot. DeShazo
          said that he relayed his observation that Petitioner
23       was not involved in the riot to Correctional Officer
          Worth, who prepared the schematic map of the scene
24       which included where the inmates were when they were
          ordered to get down.   Worth did not recall DeShazo's
25       comment. Correctional Lieutenant Henderson stated that
          "(it had) been determined that the Southern Hispanic
26       inmates attacked the Fresno Bulldogs, which resulted
          in (the) riot. Both Petitioner and Leon (were) known
27       Southern Hispanic inmates, of which it is believed
          they were also participants in the fighting due to
28       (their) placement on the schematic map."
          After the SHO determined that a riot took place, the

1     SHO defined "participation" for purpose of the
disciplinary proceedings:

2     "Participation means the inmate knows he is part of
the group of two or more intent upon riot, rout or

3     unlawful assembly. Usually this means he failed to
leave when the opportunity (sic) or when violence

4     began." "Participation in a riot does not necessarily
mean that an individual identified on the schematic

5     map, in a location had to receive injury or produce
injury to another, it simply means acting with or

6     supporting another or others with the intent to commit
the aforementioned offense.  If an individual has

7     allegiances and/or links to a specific group, which is
engaged in the riot and the individual fails to

8     disperse or get down at a riot location after in-
structed to do so and has been identified on the

9     schematic map in the riot location, it is presumed the
individual participated in the riot with or without

10     staff observing the individual act of participation."
Using this definition of participation, the SHO

11     expressly found that Petitioner was identified as a
member of the Southern Hispanic gang, "was identified

12     as being involved in the riot and placed on the
schematic map as #7," and failed to disperse.  The SHO

13     acknowledged that the fact Petitioner was "not
observed by staff actively participating in the riot"

14     was a mitigating circumstance, but concluded it did
not outweigh the preponderance of the other evidence

15     received at the hearing. The SHO found Petitioner
guilty of participating in a riot.

16 (Respondent's Lodgment No. 10 at 3-4)

17     Petitioner was assessed a forfeiture of ninety days of good

18 time credit. (Respondent's Lodgment No. 2)

19                       III

20               GROUNDS FOR RELIEF

21     Petitioner claims that the findings of the disciplinary

22 committee were insufficient to find him guilty of participating in

23 a riot.  Specifically, he asserts that one factor relied upon by the

24 disciplinary committee (his alleged gang affiliation) is unsupported

25 by the record.  Further, Petitioner contends that the California

26 Court of Appeal neglected to address the uncontroverted exculpatory

27 evidence in the record that he did not participate in the riot.

28

IV

STANDARD OF REVIEW

In order for federal subject matter jurisdiction over a petition for writ of habeas corpus to lie, the petition must allege that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.   See 28 U.S.C.A. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996.   The current petition was filed on August 19, 2009 and is therefore governed by the AEDPA.   To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).   See Williams v. Taylor, 529 U.S. 362, 403 (2000).

Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was *contrary to*, or *involved an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented* in the State court proceeding.

(Emphasis added).

The Supreme Court interprets § 2254(d)(1)and (2) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the unreasonable appli-

5

09CV1811

cation" clause, a federal habeas court may
grant the writ if the state court identi-
fies the correct governing legal principle
from this Court's decisions but unreason-
ably applies that principle to the facts of
the prisoner's case.

Williams, 529 U.S. at 412-13.

A state court's decision may be found to be "contrary to" clearly established Supreme court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from the [the court's] precedent." Id. at 405-406; Lockyer v. Andrade, 538 U.S. 63, 72-75 (2003). A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 539 U.S. at 407; Andrade, 538 U.S. at 76.

Under §2254(d)(2), a petitioner may obtain relief by showing that the conclusion of the state court was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Therefore, the court must presume that the state court's factual findings to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing

1  evidence." §2254(e)(1). <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240

2  (2005)

3       Section 2254(e)(1) states:

4            In a proceeding instituted by an
             application for writ of habeas corpus by a
5            person in custody pursuant to a judgment of
             a State court, a determination of a factual
6            issue shall be presumed to be correct.  The
             applicant shall have the burden of rebut-
7            ting the presumption of correctness by
             *clear and convincing evidence.*
8  (Emphasis added).

9       "This standard is demanding but not insatiable... deference

10 does not by definition preclude relief." <u>Miller-El v. Cockrell</u>, 537

11 U.S. 322, 340 (2003).  Factual findings may be infected with

12 substantive legal error where the fact-finding process itself is

13 defective.  The state court fact-finding process is undermined where

14 the state court has before it, yet apparently ignores, evidence that

15 supports a petitioner's claim. <u>Id.</u> at 346, <u>Taylor v. Maddox</u>, 366

16 F.3d 992, 1001 (9th Cir. 2004).

17      When there is no reasoned decision from the state's highest

18 court, the Court "looks through" to the underlying appellate court

19 decision. <u>Ylst v. Nunnmaker</u>, 501 U.S. 797, 801-06 (1991).  If the

20 dispositive state court order does not "furnish a basis for its

21 reasoning," federal habeas courts must conduct an independent review

22 of the record to determine whether the state court's decision is

23 contrary to, or an unreasonable application of, clearly established

24 Supreme Court law.  See <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th

25 Cir. 2000) (overruled in part by <u>Andrade</u>, 538 U.S. at 74-77).

26 \\

27 \\

28 \\

09CV1811

V

<u>THE DECISION OF THE CLAIFORNIA COURT OF APPEAL INVOLVED AN
UNREASONABLE APPLICATION OF U.S SUPREME COURT LAW</u>

In this case, the California Supreme Court denied Petitioner's Petition for Review without comment. (Respondent's Lodgment No. 12). Therefore, the Court "looks through" to the California Court of Appeal's decision. (Respondent's Lodgment No. 10).

Petitioner contends that he is entitled to relief because the California Court of Appeal unreasonably applied U.S. Supreme Court law in its decision denying his claim. Respondent argues that in denying Petitioner's claim, the California Court of Appeal used the correct legal standard.

When an inmate challenges the revocation of good conduct credits on federal due process grounds, a reviewing court must apply the standard of review set forth in <u>Superintendent v. Hill</u> 472 U.S. 445, 454 (1985). Pursuant to <u>Hill</u>, a prison disciplinary action will not be disturbed so long as "some evidence" supports the action taken. <u>Id.</u> at 455.

The Ninth Circuit has held that the "some evidence" standard of <u>Hill</u> is clearly established federal law for AEDPA purposes applicable to prison disciplinary proceedings, "because the (decision rendered) directly affect(s) the duration of the prison term." <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1127-28 (9th Cir. 2006) [<u>quoting</u> <u>Jancsek v. Oregon Board of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987)].

<u>Hill</u>'s "some evidence" standard assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary...The fundamental

09CV1811

1   fairness guaranteed by the Due Process Clause does not require
2   courts to set aside decisions of prison administrators that have
3   some basis in fact." Hill, 472 U.S. at 456-457; Sass, 461 F.3d at
4   1129.

5       Nonetheless, there must be some indicia of reliability of the
6   information that forms the basis for prison disciplinary actions.
7   Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); Zimmerlee v.
8   Keeney, 831 F.2d 183, 186 (9th Cir. 1987); Luna v. Pico, 356 F.3d
9   481, 488 (2nd Cir. 2004); Lenea v. Lane, 882 F.3d 1171, 1175-1176 (7th
10  Cir. 1989); Aquiar v. Tafoya, 95 Fed. Appx. 931, 935 (10th Cir.
11  2004).

12      In this case, the Court of Appeal found, *inter alia,*
13  Petitioner participated in the riot because the schematic drawing of
14  the prison yard where the riot occurred, placed him in the location
15  of the riot.  (Respondent's Lodgment No. 10 at 7-8, Respondent's
16  Lodgment No. 13)

17      The schematic drawing is a depiction of the prison yard where
18  the combatants in the riot, Petitioner, and inmate Leon were
19  standing when they were ordered to "get down."  Combatants Carrillo
20  and Aguirre are identified on the schematic drawing as nos. 1 and 2,
21  respectively.  Combatants Luscano, Chavez and Royzman are identified
22  on the schematic drawing as nos. 3, 4 and 5, respectively.  Inmate
23  Leon is identified on the schematic drawing as no. 6.  Petitioner is
24  identified on the schematic drawing as no. 7.  The schematic drawing
25  is not drawn to scale. (Respondent's Lodgment No. 13)

26      "(Petitioner) was not named as one of the combatants (in the
27  riot)... The fight involving inmates Luscano, Chavez and Royzman
28  took place near the corner of CFB2 (Facility C Building 2)... The

1     schematic map showed (inmate) Leon and (Petitioner) standing in

2     front of CFB2, but did[1] indicate specifically how far they were from

3     Luscano, Chavez and Royzman." (Respondent's Lodgment No. 10 at 2)

4         The Court's review of the schematic drawing (Respondent's

5     Lodgment No. 13) shows that the person who was standing closest to

6     Petitioner was inmate Leon, who was not identified as a combatant in

7     the riot. There is no evidence in the record to suggest that

8     Petitioner and inmate Leon were actively involved in the riot. In

9     fact, the contrary is true. The Court of Appeal noted, "(Correc-

10    tional Officer R. DeShazo) testified that (Petitioner) was not an

11    active participant in the riot." (Respondent's Lodgment No. 10 at

12    3). The Rules Violation Report states, "...(Petitioner) was not

13    observed by staff actively participating in the riot..."

14    (Respondent's Lodgment No. 2 at 4).

15        Further, the schematic drawing is not drawn to scale.

16    Therefore, it is impossible for this Court (or, for that matter, any

17    other tribunal) to determine how "near" Petitioner was to the

18    rioting combatants Luscano, Chavez and Royzman. Consequently, the

19    evidence that Petitioner was in the location of the riot is, at

20    best, inconclusive, and is unsupported by evidence in the record.

21    Moreover, since the schematic drawing is not drawn to scale, there

22    is no indicia of reliability that the drawing depicts how near or

23    far Petitioner was from the rioting combatants, or if he was even in

24    the location of the riot. As a result, the Court finds that the

25    Court of Appeal's reliance on the "fact" that the schematic drawing

26

27    [1]   The word "not" does not appear after the word "did" in the Court of
Appeal's opinion. However, a fair reading of the sentence suggests
that the word "not" was erroneously omitted. As this Report and

28    Recommendation discusses *infra*, the schematic map does "not"
indicate specifically how far Petitioner was from combatants
Luscano, Chavez and Royzman.

1   placed Petitioner in the location of the riot is not "some evidence"

2   that Petitioner was guilty of participation in a riot. Consequently,

3   the Court of Appeal's opinion involved an unreasonable application

4   of <u>Hill</u> and its progeny, with regard to finding Petitioner's

5   placement on the schematic drawing as being in the location of the

6   riot.

7        Additionally, the Court of Appeal stated: "We also note that

8   Officer DeShazo's statement in the hearing that (Petitioner) was not

9   an active participant in the riot contradicts Lieutenant Henderson's

10   stated *belief* that (Petitioner's) proximity to the fighting...

11   showed he participated in the riot." (Respondent's Lodgment No. 10

12   at 8-9)(emphasis added). However, Officer DeShazo's statement is a

13   first-hand eye-witness account of the riot. He had first-hand

14   knowledge of where Petitioner was standing at the time of the riot.

15   Therefore, Officer DeShazo's statement is "some evidence" that

16   Petitioner *did not* participate in the riot.

17        On the other hand, Lieutenant Henderson was not an eye-

18   witness to the riot nor does it appear that he had first-hand

19   knowledge of the riot. His statement simply reports what other

20   prison personnel did in response to the riot. (Respondent's Lodgment

21   No. 2 at 6, Respondent's Lodgment No. 3 at 2).

22        Lieutenant Henderson's Incident Report indicates that

23   Petitioner was a "suspect." (Respondent's Lodgment No. 3 at 2).

24   Further, his statement reads in pertinent part, "(i)t has been

25   determined that the Southern Hispanic inmates attacked the Fresno

26   Bulldogs, which resulted in this riot... (Petitioner )... (is a)

27   known Southern Hispanic inmate, of which it is believed (he) also

28   (was a) participant in the fighting due to (his) placement on the

1    schematic map." (Respondent's Lodgment No. 2 at 6).

2         Lieutenant Henderson's statement simply states *beliefs* that

3    Petitioner was involved in the riot based on the unsupported

4    contention of Petitioner's membership in a rival gang and his

5    placement on the schematic drawing.  Lieutenant Henderson's *beliefs*

6    cannot be considered "some evidence" that Petitioner participated in

7    the riot.  First, they are simply *belief*s. It is unclear from the

8    record whose *beliefs* they are.   Even if they are Lieutenant

9    Henderson's *beliefs*, they are not evidence that Petitioner partici-

10   pated in the riot.  Second, as the Court has previously found, the

11   schematic drawing, upon which Lieutenant Henderson relied, is not

12   "some evidence" that Petitioner participated in the riot.   As a

13   result, the Court of Appeal's opinion involved another unreasonable

14   application of <u>Hill</u> and its progeny with regard to its finding

15   Petitioner's placement on the schematic drawing as being in the

16   location of the riot.

17                                    VI

18        THE DECISION OF THE CALIFORNIA COURT OF APPEAL WAS
          BASED ON AN UNREASONABLE DETERMINATION OF FACTS IN
19              LIGHT OF THE EVIDENCE PRESENTED

20        1. <u>Definition of "Participation In A Riot"</u>

21        The Court of Appeal stated that the Senior Hearing Officer

22   (hereafter "SHO") used the following definition of "participation in

23   a riot:"

24             'Participation' means the inmate *knows* he is part
          of the group of two or more *intent upon riot*, rout or
25        unlawful assembly. Usually, this means he failed to
          leave when the opportunity (sic) or when violence
26        began... Participation in a riot does not necessarily
          mean that an individual indentified (sic) on the
27        schematic, in a location had to receive injury [or]
          produce injury to another, it simply means *acting with*
28        *or supporting another or others with intent to commit*
          *the aforementioned offense...*

                                    12                    09CV1811

1     (If) an individual has allegiances and/or links to (a)
      specific group, which is engaged in a riot and the
2     *individual fails to disperse from or get down at a
      riot location after instructed to do so* and has been
3     identified on the schematic in the riot location, it
      is presumed the individual participated in the riot
4     with or without staff observing the individual act of
      participation.
5   (Respondent's Lodgment No. 10 at 3)(emphasis added)

6         Petitioner was charged and found guilty of violating

7   California Code of Regulations (hereafter "CCR") §3005(d)(3)[2] which

8   states: "Inmates shall not participate in a riot, rout or unlawful

9   assembly." The SHO cited California Penal Code §§ 404 and 409 as

10  the law which was to be applied to Petitioner's charge.  California

11  Penal Code § 404 states:

12        Riot; elements.
          (a) Any use of force or violence, disturbing the
13        public peace, or any threat to use force or violence
          if accompanied by immediate power of execution by two
14        or more persons *acting together*, and without authority
          of law, is a riot.
15        (B) As used in this section, disturbing the public
          peace may occur in any place of confinement.  Place of
16        confinement means any state prison...
          (Emphasis added)
17
    California Penal Code §409 states:
18
          Riot, rout or unlawful assembly;
19        remaining present after warning to disperse.
          Remaining present at a place of riot, etc. after
20        warning to disperse. Every person remaining present at
          the place of any riot, rout or unlawful assembly,
21        *after the same has been lawfully warned to disperse*...
          is guilty of a misdemeanor.
22        (Emphasis added)

23

24  _____

25  [2]    Petitioner was cited for violation of CCR 3005(c) (Respondent's
           Lodgment No. 2 at 2) However, it is obvious that §3005(c) does not
26         apply in this case.  §3005(c) states:
               Refusing to Accept Assigned Housing.  Inmates
27             shall not refuse to accept a housing assignment
               such as but not limited to, an integrated housing
               assignment or a double cell assignment, when case
28             factors do not preclude such.
           The Court finds that Petitioner's alleged offense was that he
           violated §3005(d)(3).

                                        13                        09CV1811

1    While the SHO's definition of "participation in a riot"
2  generally comports with California law as noted above, the Court of
3  Appeal's determination of the facts as they apply to the SHO's
4  definition and California law was unreasonable:

5       2. "Intent Upon Riot"

6       The SHO used in his definition of "participation in a riot,"
7  the following phrase: "Participation means that the inmate *knows* he
8  is part of a group of two or more *intent upon riot."* The Court of
9  Appeal did not comment on this part of the SHO's definition.

10      However, the Court's review of the record presented shows
11 that there is absolutely no evidence whatsoever to even suggest,
12 much less find, that Petitioner "knew" he was part of a group of two
13 or more "intent upon riot." Therefore, the Court of Appeal's tacit
14 acceptance of this definition and its application to the facts of
15 Petitioner's case is simply unreasonable because there is no
16 evidence upon which it could have relied to find this element of
17 "participation in a riot."

18      3. "Acting With Or Supporting Another Or Others"

19      The SHO used in its definition of "participation in a riot,"
20 the following phrase: "... acting with or supporting another or
21 others with intent to commit the aforementioned offense."  While
22 this phrase generally comports with California law, the Court of
23 Appeal did not comment on this part of the SHO's definition.

24      However, the Court's review of the record presented shows that
25 there is absolutely no evidence whatsoever to even suggest, much
26 less find, the Petitioner was "acting with or supporting another or
27 others with intent..." to riot.  Therefore, the Court of Appeal's
28 tacit acceptance of this definition and its application to the facts

1   of Petitioner's case is simply unreasonable because there is no

2   evidence upon which it could have relied to find this element of

3   "participation in a riot."

4          4. "Failure To Disperse or Get Down"

5          The SHO used in his definition of "participation in a riot,"

6   the following phrase: "... the individual fails to disperse from or

7   get down after instructed to do so."  The Court of Appeal commented

8   on this part of the SHO's definition by stating: "We agree with

9   (Petitioner) that there is no evidence he was ordered to disperse

10  and failed to do so." (Respondent's Lodgment No. 10 at 7) However,

11  it did not comment further.

12         The Court's review of the record presented shows that this

13  part of the SHO's definition does not comport with California law,

14  nor was there any evidence that Petitioner failed to disperse.

15         As noted above, California Penal Code §409 requires that a

16  person who remains present at the place of a riot, after he/she has

17  been lawfully *ordered to disperse*, is guilty of a misdemeanor.

18         The objective of §409 is to enable law enforcement personnel

19  to diffuse a riotous situation by ordering persons to remove

20  themselves from the area without the need to distinguish between

21  rioters and bystanders.  But, California courts require a clear and

22  present danger of imminent violence before bystanders can be

23  arrested along with participants in a riot.  The Ninth Circuit has

24  held that "(a)bsent these compelling circumstances... the police are

25  at least required to differentiate between the participants and

26  innocent bystanders." Dubner v. City & County of San Francisco 266

27  F.3d 959, 967-968 (9th Cir. 2001).

28

1    Here, it is clear from the record that Petitioner was not

2  ordered to disperse.   Rather, he was ordered to get down.   He

3  complied with that order.   To be guilty of participation in a riot,

4  it was required that Petitioner be warned or ordered to *disperse*.

5  Since Petitioner complied with the order to get down, it was

6  impossible for him to *disperse*.   Therefore, there is no evidence in

7  the record, nor could there be any evidence in the record, that

8  Petitioner failed to disperse. As a result, the Court of Appeal's

9  tacit acceptance of this definition and its application to the facts

10  to Petitioner's case is simply unreasonable because there is no

11  evidence in the record upon which it could have relied to find this

12  element of "participation in a riot."

13    Moreover, the Court of Appeal did not acknowledge nor address

14  the objective of California Penal Code §409, as discussed in <u>Dubner</u>,

15  <u>supra</u>.   Had it done so, it would have found that prison personnel

16  present at the time and location of the riot did not make a

17  determination whether Petitioner was a participant in the riot or an

18  innocent bystander.   Instead, they *assumed* he was a participant in

19  the riot. However, the record contains reliable clear and convincing

20  evidence that Petitioner was not a participant in the riot; rather,

21  he was a bystander. (Respondent's Lodgments Nos. 2 at 7; 3 at 7 and

22  10 at 8-9)

23    5. <u>Petitioner was Identified As A Member of One of the</u>
        <u>Rioting Groups</u>

24

25    The Court of Appeal found the following in finding that "some

26  evidence" supported that Petitioner "participated in a riot:"

27  (1) Petitioner was identified as a member of one of the rioting

28  groups; (2) the schematic drawing placed Petitioner in the location

1   of the riot; (3) he was identified as being involved in the riot and
2   he failed to disperse. (Respondent's Lodgment No. 10 at 7).

3       The Court has already found that the schematic drawing of the
4   prison yard was not "some evidence" under <u>Hill</u> because it had no
5   indicia of reliability and did not comport with other evidence in
6   the record.   The Court has also found that Petitioner was not
7   ordered to disperse.   Rather, he was ordered to get down and
8   complied with that order, making it impossible for him to disperse.

9       Therefore, the only reliable evidence, which could be
10  considered "some evidence" under <u>Hill</u>, is that Petitioner was
11  identified as a member of one of the rioting groups.   While the
12  Court remains faithful to the United States Supreme Court's
13  admonition in <u>Hill</u> that it should not reweigh the evidence or judge
14  the credibility of witnesses, this is the only evidence implicating
15  Petitioner in "participation in a riot." However, simply being
16  identified as a member of one of the rioting groups is not "some
17  evidence," as required by <u>Hill</u>. Whether or not Petitioner was a
18  member of one of the rioting groups does not show that Petitioner
19  participated in a riot involving that group. Therefore, the Court
20  finds that this evidence alone is insufficient to meet the standard
21  set forth in <u>Hill</u>. See <u>Cato</u>, 824 F.2d 705.   As a result, the Court
22  finds that the Court of Appeal's factual findings, as noted above,
23  were unsound. The record presented to the Court rebuts the presump-
24  tion of correctness of the Court of Appeal's factual findings by
25  clear and convincing evidence. §2254(e)(1); <u>Dretke</u>, 545 U.S. at 240.

26      Consequently, for the reasons set forth above, the California
27  Court of Appeal's decision involved an unreasonable application of
28  U.S. Supreme Court law and was based on an unreasonable determina-

1    tion of the facts in light of the evidence presented. The Court

2    RECOMMENDS that the Petition be GRANTED.

3                     **CONCLUSION AND RECOMMENDATION**

4         After a review of the record in this matter, the undersigned

5    Magistrate Judge recommends that the Petition for Writ of Habeas

6    Corpus be GRANTED.

7         This report and recommendation of the undersigned Magistrate

8    Judge is submitted to the United States District Judge assigned to

9    this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

10        **IT IS ORDERED** that no later than <u>March 5, 2010</u>, any party to

11   this action may file written objections with the Court and serve a

12   copy on all parties.  The document should be captioned "Objections

13   to Report and Recommendation."

14        **IT IS FURTHER ORDERED** that any reply to the objections shall

15   be filed with the Court and served on all parties no later than __

16   <u>April 5, 2010</u>.  The parties are advised that failure to file

17   objections within the specified time may waive the right to raise

18   those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>,

19   951 F.2d 1153 (9th Cir. 1991).

20

21   DATED:  February 2, 2010

22

23   _____

24                              Hon. William V. Gallo
                                U.S. Magistrate Judge

25

26

27

28